❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information about the location of the call<br>number associated with vehicle identification<br>number (VIN) 1C6SRFU98MN903300 | )<br>)<br>)<br>)<br>)<br>)    Case No.22-1876M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 12/13/2022_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Nancy Joseph, United States Magistrate Judge .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of _____06/01/2023_____ .

Date and time issued: 11/29/2022 @ 11:18 a.m._____          *Nancy Joseph*
                                                                                              *Judge's signature*

City and state:  Milwaukee, Wisconsin_____          Nancy Joseph, United States Magistrate Judge
                                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the call number associated with vehicle identification number (VIN) 1C6SRFU98MN903300 (referred to herein and in Attachment B as "the Target Call Number"), with listed subscriber(s) unknown, that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.

2. The Target Call Number.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a.   The following subscriber and historical information about the customers or subscribers associated with the Target Call Number for the time period from November 14, 2022, to the present.

   i.   Names (including subscriber names, user names, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Call Number, including:

(i) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) for all voice, text, and data records.

(iii) timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b. Information associated with each communication to and from the Target Call Number for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Call Number will connect at the beginning and end of each communication.

v. timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Call Number.

c. Information about the location of the Target Call Number for a period of 30 days, during all times of day and night. "Information about the location of the Target Call Number" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location

Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Call Number on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.    Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. §§ 371, 511, and 2312 involving DIAUNTE SHIELDS (DOB: 02/18/1995), and others known and unknown since January 1, 2019.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information about the location of the call number<br>associated with vehicle identification number (VIN)<br>1C6SRFU98MN903300 | )<br>)<br>)<br>)<br>)<br>)    Case No. 22-1876M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 511, and 2312 | conspiracy to violate the laws of the United States, altering or removing motor vehicle identification numbers, and interstate transportation of stolen vehicles |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:*   06/01/2023   *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

           11/28/22

*Applicant's signature*

Shane Hoffmann, Special Agent (FBI)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means).*

Date: 11/29/2022

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Nancy Joseph, United States Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Shane Hoffmann, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the call number associated with vehicle identification number (VIN) 1C6SRFU98MN903300 (the "Target Call Number"), whose service provider is AT&T ("Service Provider"), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408. The Target Call Number is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Call Number .

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since September 2015. I am currently assigned to the Milwaukee Division – Madison Resident Agency. Since becoming a Special Agent, I received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of

2

alleged criminal violations of federal statutes and laws. I have participated in the execution of search warrants in various judicial districts, including the recovery of records, contraband, and other types of property. I also have experience installing and monitoring GPS tracking devices, and analyzing the data collected from those devices for use in federal criminal investigations. I also have experience and have drafted numerous affidavits regarding the tracking of cellular phones and the subsequent analysis of phone location data for use in federal criminal investigations.

4.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 371 (conspiracy), 511 (altering or removing motor vehicle identification numbers), and 2312 (interstate transportation of stolen vehicles) have been committed, are being committed, and will be committed by DIAUNTE D. SHIELDS (DOB: 02/18/1995), and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

7.     The United States, including Federal Bureau of Investigation is conducting a criminal investigation of DIAUNTE D. SHIELDS (DOB: 02/18/1995) and others known and unknown regarding possible violations of 18 U.S.C. §§ 371 (conspiracy), 511 (altering or removing motor vehicle identification numbers), and 2312 (interstate transportation of stolen vehicles).

*Overview*

8.     This investigation involves the organized theft and resale of high-end motor vehicles. I know from my training and experience that there is a large amount of money associated with the theft and sale of high-end motor vehicles. I also know that high-end vehicles over the retail price of $50,000 have means of identifying the vehicle other than VIN plates and stickers, such as: hidden VIN stamps, identifying parts numbers, etching on glass windows, and electronic data stored in the vehicle's Electronic Control Unit (ECU). Based on this investigation, I believe that the auto theft ring with which SHIELDS is involved is replacing the stolen vehicles VIN plates and VIN stickers but not changing the hidden identifying features.

*Kenosha County Investigation*

9.     On or around March 10, 2022, a 2018 red Jeep Grand Cherokee Track Hawk, VIN number 1C4RJFN97JC223750, was reported to have been stolen from General Mitchell International Airport, 5300 S. Howell Ave, Milwaukee, Wisconsin 53207. Milwaukee County Sheriff's Office ("MCSO") Detective Matthew Vandertie was assigned to investigate the stolen red Jeep Grand Cherokee, along with the other stolen vehicles. Detective Vandertie has advised me that the vehicles being targeted are high-end Dodge Hellcats, Ram TRX, and Jeep Track Hawks. Detective Vandertie explained that some of the vehicles have been tracked with the on-board vehicle modems to the Kenosha area.

10.     On March 15, 2022, the Wisconsin registration license plates for the 2018 red Jeep Grand Cherokee Track Hawk, VIN number 1C4RJFN97JC223750, were recovered by the Kenosha County Sheriff's Department from Neumiller Woods Park, 8100 12th Street, Somers, Wisconsin.

11.     On March 26, 2022, Kenosha Deputy Brooks responded to the Hawthorn Apartments, 5802 10th Place, Kenosha, Wisconsin (about 1.5 miles from where the Jeep Grand Cherokee plates were found) for a complaint of a suspicious new black Ram TRX parked backed into the same parking spot for several days with a broken window. Upon Deputy Brooks' arrival, the black Ram TRX was gone. Deputy Brooks contacted the caller who reported seeing a black male in a white Ford Transit Van displaying license plate D14971H parked alongside the black Ram TRX. The caller reported a second male inside the black Ram TRX. The two vehicles left together in the same direction. Deputy Brooks conducted an area canvas of the apartments located around where the black Ram TRX was parked. None of the residents knew who the black Ram TRX belonged to.

12.     During the search for the Black TRX, Deputy Brooks located a white Ford Transit Van displaying Alabama registration plate D14971H parked several units over from where the black Ram TRX was parked. Deputy Brooks observed the Ford van leave. Deputy Brooks conducted a traffic stop on the Ford van and contacted the driver who identified himself via Wisconsin photo driver's license as DIAUNTE D. SHIELDS.

13.     Deputy Brooks spoke with SHIELDS regarding the black Ram TRX and the broken window. SHIELDS said that he was visiting his girlfriend, CASHA T. GRIFFIN, who resides at 1050 58th Court, Unit 103, Kenosha, Wisconsin. SHIELDS denied that he knew anything about the black Ram TRX. Deputy Brooks obtained a phone number for SHIELDS, (773) 690-8469. SHIELDS was released.

14.     On March 28, 2022, Kenosha Detectives Becker and Castillo responded to the Hawthorn Apartments. Becker observed a white Ford Transit van backed into a visitor parking spot along the east side of 1050 58th Court. The Ford Transit van did not display a front registration plate. Along the driver's side of the white Ford Transit van was a white BMW 840i backed into a visitor parking stall. The BMW did not display a front registration plate. Becker walked around the white Ford Transit van and white BMW 840i and observed in plain view the registration plate and VIN plate information for the vehicles. The Ford Transit van displayed rear Alabama registration plate (D14971H) and VIN: (1FTYR1ZMOJKB00352). Near the VIN plate on the Ford van Becker observed a receipt from Safe Auto Glass & Body LLC, 5044 South 27th Street, Milwaukee, Wisconsin 53221, on the driver's side on dashboard for window glass for a Ram 1500. The receipt listed the VIN for a black Ram 1500 (1C6SRFU91MN904255). The receipt showed the customer number (773) 946-3995. Detective Becker conducted a search through TLO, a law enforcement information sharing website, on phone number (773) 946-3995. The results of the search showed the number belonged to DIAUNTE D. SHIELDS.

15.     Detective Becker contacted Tom Almaghrabi from Safe Auto Glass & Body LLC, who advised that a black male who refused to identify himself but provided telephone number (773) 946-3995 purchased windshield glass for a Ram 1500 on March 28, 2022. The male arrived in a white Ford Transit van. Almaghrabi said that the same male has purchased windshields from him in the past for Dodge Hellcats, Challengers, and Jeep Trackhawks.

16.     Detective Becker also conducted a record check through the Wisconsin Department of Transportation on the Alabama registration plate displayed on the white Ford Transit van. The results of the check showed the registration came back to Prospect Motors LLC, 3615 Gray Avenue, Adamsville, Alabama 35005. Contact was made with Prospect Motors who advised that the plate was issued to CASHA T. GRIFFIN to work as a wholesale buyer of vehicles for Prospect

Motors out of the Chicago area. CASHA T. GRIFFIN stopped all communication with Prospect Motors after receiving the registration plates and has not gone to any of the vehicle auctions.

17.     The white BMW 840i displayed rear Georgia temporary registration plate (S1109239) and VIN: (WBAGV2C08LCD87486). Detective Becker conducted a record check through the Wisconsin Department of Transportation on the displayed VIN (WBAGV2C08LCD87 486) on the white BMW 840i. The results showed the vehicle is registered to Executive Rent A Car and CASHA T. GRIFFIN at 1436 Lincoln Street Racine, Wisconsin. Detective Becker conducted a search through Wisconsin Department of Financial Institutions on Executive Rent A Car, which revealed that it was registered on January 31, 2022 by registering agent DIAUNTE D. SHIELDS with an address of 1436 Lincoln Street, Racine, Wisconsin 53402.

18.     Detective Becker then contacted the Georgia Bureau of Investigation regarding the Georgia registration S1109239. Detective Becker was advised that the Temporary Operating Permit (TOP) was issued to an out-of-state white 2020 BMW 840i in Fulton County, Georgia. The Georgia Bureau of Investigation had no further information regarding the register.

19.     Detective Becker made contact with Special Agent Todd Heinz from the National Insurance Crime Bureau ("NICB") and provided him with the vehicle identification information from the white Ford Transit van and white BMW 840i. Special Agent Heinz advised that he conducted a search on the VIN (1 FTYR1ZM0JKB00352) that was displayed on the white Ford Transit van. The results of the check showed the VIN (1FTYR1ZM0JKB00352) was never created by Ford Motor Company, indicating that the VIN on the white Ford Transit van is fraudulent and the vehicle is potentially a stolen auto with false VIN plate.

20.     Detective Becker conducted a record check on DIAUNTE D. SHIELDS through the Kenosha County Joint Services. The results of the check show DIAUNTE D. SHIELDS's last listed address with the Wisconsin Department of Transportation at 8920 83rd Street, Pleasant

Prairie, Wisconsin, which is the same address listed for the black BMW X6. The record also indicated DIAUNTE D. SHIELDS was arrested on January 5, 2021 in Glendale, Missouri for attempting to steal an automobile.

21.     Detective Becker contacted the Glendale Missouri Police Department and requested the police report for SHIELDS's January 2021 arrest. The report indicated SHIELDS was located by Glendale Police at a dealership in Glendale, Missouri with a male identified as Christin D. Edwards, attempting to steal a white Dodge Charger Hellcat. SHIELDS was located with a window punch, Dodge key fobs, and computer equipment needed to reprogram a key fob to gain access to operate a vehicle. At the time of arrest, SHIELDS reported he worked for DAW Logistics LLC. SHIELDS is currently on probation for the Glendale, Missouri charges.

22.     On April 26, 2022, the Kenosha County Sheriff's Department executed search warrants for residences and a storage associated to SHIELDS and his family/close associates in the Kenosha, Wisconsin area. Those searches revealed vehicle key fobs and programming equipment, radio frequency equipment, false vehicle titles, vehicle with a false VIN, banking paperwork, and designer clothing and accessories. SHIELDS was charged in Kenosha County Circuit Court under case 2022CF000822 for Money Laundering, Drive or Operator Motor Vehicle without Owner's Consent, Alter Vehicle Identification Number, Counterfeit Certificate of Title, Felon in Possession of Firearm, and Theft – Movable Property – Special Facts. An arrest warrant was issued for SHIELDS on June 17, 2022.

*Milwaukee County Investigation*

23.     On March 20, 2022 shortly after 1:00 p.m., the Milwaukee County Sheriff's Office was alerted to a Ram pickup truck (Missouri license plate 8KBJ78; vehicle identification number (VIN) 3C63R3RL5LG219772) leaving the parking structure at the Milwaukee Mitchell International Airport (MMIA), located at 5300 South Howell Avenue in Milwaukee. Around that

time, Interflight Parking – the parking services organization at the structure – would notify MCSO when Ram pickup trucks or Jeep Grand Cherokee sport utility vehicles were leaving the parking structure due to the numerous thefts of these types of vehicles from the structure. Approximately 20 vehicles of these types (and one Dodge Durango) were stolen from the MMIA between April 2021 and June 2022.

24.    MCSO Deputy D. Scott positioned his squad car in front of the parking lane where the Ram pickup truck was, exited his squad, and observed the rear passenger window broken/missing. This caused Deputy Scott to suspect that the vehicle might be stolen via breaking the window and entering the vehicle, which Deputy Scott has known to occur in the past.

25.    Deputy Scott exited his squad, ordered the driver to get out of the vehicle, and the Ram pickup truck attempted to flee, struck another vehicle, and then struck a boulder. The driver exited and fled on foot back into the parking structure. Deputies observed a subject, later identified as Lashawn Davis Jr. (DOB: 05/07/2000), in the parking structure, sweating, breathing heavily, and had gravel and debris on his forearms.

26.    The Ram pickup truck owner, later identified as AJL (M/W, 12/2/1981), did not give consent for any individual(s) to take and drive his vehicle from the parking structure.

27.    While on scene, Davis stated that he came to the parking structure in a black Jeep. Deputies looked in the parking structure for a vehicle matching this description and located it driving through the structure and exiting. Deputies stopped this vehicle, a Jeep Grand Cherokee sport utility vehicle, black in color, upon it exiting the parking structure. The driver and sole occupant was identified as Amya V. Williams (F/B, 01/12/2001). The VIN displayed at the windshield was 1C4RJFBG2LC954690.

28.    According to Wisconsin Department of Transportation (DOT) records, the vehicle was registered as a 2020 Jeep Grand Cherokee sport utility vehicle, black in color, and the

registered owner was Williams. However, it was later determined that the VIN plate at the windshield of the Jeep Grand Cherokee sport utility vehicle was a fake VIN. Detective D. Woo photographed a part on the underside of the Jeep Grand Cherokee sport utility vehicle on scene. A check of the part number revealed that it was actually from a vehicle also determined to be stolen from the MMIA parking structure. It was noted during a later search of the Jeep Grand Cherokee sport utility vehicle that VIN 1C4RJFCTXMC584523 was located in a hidden location, in the interior of the vehicle. According to Wisconsin DOT records, the vehicle was actually registered to DJJ (M/W, 11/26/1968), who did not give consent for any individual(s) to take and drive his vehicle from the parking structure. DJJ stated that he parked his vehicle in the parking structure on March 11, 2022. Interflight Parking records show that DJJ's vehicle was removed from the structure on March 13, 2022.

29. During a custodial interview, Davis denied driving the Ram pickup truck but admitted that he was at the parking structure to act as a lookout for "Deandre Littles" for $1500. Davis admitted to arriving at the parking structure in the Jeep Grand Cherokee sport utility vehicle.

30. On March 21, 2022, deputies processed both vehicles for evidence. Inside the Jeep Grand Cherokee sport utility vehicle, they located electronic key programming devices/equipment, numerous vehicle key fobs, center punches (hand tools with a handle/shaft and pointed tip), other VIN stickers, and documents, to include a notebook with handwritten vehicle information. Inside the Ram pickup truck, they located an Advanced Diagnostics brand cable, which is of the same brand as one of the key programmers, and center punch of the same type located in the Jeep Grand Cherokee sport utility vehicle. Deputies also processed both vehicles for fingerprints/deoxyribonucleic acid (DNA) and collected other items.

31. The FBI and the MCSO are aware, based on law enforcement intelligence sharing regarding vehicle thefts, that a current trend with higher value motor vehicle thefts is that the

vehicles are stolen by use of key fob programming.

32.     On March 31, 2022, United States Secret Service Special Agent Darrin Kimes and MCSO Detective Vandertie executed a search warrant, which was authorized in Milwaukee County Circuit Court by Court Commissioner Barry Phillips, on the two key programmers. While searching the Advanced Diagnostics SMART Pro key programmer, they noted that the username logged in the device was champrob221@icloud.com. Detective Vandertie was further informed by a representative of Advanced Diagnostics that the device's registered owner had a username of "champrob221@icloud.com" under the name "JEVON ROBINSON" of "2223 S AVERS W" in "CHICAGO", "ILLINOIS."

33.     While searching the Advanced Diagnostics SMART Pro key programmer under the "My Previous Vehicles" function, Detective Vandertie noted that the device registered a connection with a 2019-2022 Ram on "2022/03/20 17:56:10" (GMT), which is March 20, 2022 at 12:56:10 CST – only a short time prior to the incident described above. Detective Vandertie also noted that the device registered connections with 2019-2022 and 2020-2022 Rams on January 15, 2022. At least three 2020-2021 Rams were stolen from the MMIA parking structure on or around that date without consent of their owners; the dates and approximate times the vehicles were removed from the parking structure were derived from cellular data from the vehicles.

34.     Detective Vandertie drafted and served numerous search warrants for the cellular records related to vehicle locations; cellular records related to the account listed to Lashawn Davis; the champrob221@icloud.com account, and others. The cellular records indicate that Lashawn Davis moved to/from the airport around the times of numerous vehicle thefts. In addition, latent fingerprint and deoxyribonucleic acid (DNA) evidence implicates Lashawn Davis for vehicle thefts from the MMIA.

35.     A review of the messages from the champrob221@icloud.com account from

November 2019 through December 2020 showed extensive conversations about selling vehicles, vehicle sale prices, windows and key fobs, and vehicle titles. A review of the photographs showed numerous photographs of Diaunte D. SHIELDS (M/B, 02/18/1995). Based on this content in the champrob221@icloud.com account, investigators believe SHIELDS either actually owns the account or has some control over it.

36.     Detective Vandertie drafted and served a search warrant for cellular records for telephone number 773-542-4368, which was in contact with Lashawn Davis on vehicle theft dates. The registered user was "mike jones" and the account was effective as of December 22, 2021 and later suspended/expired in March 22, 2022. The call detail records show, among other call records, that this account utilized cellular towers in the area of the MMIA on January 15, 2022, March 9, 2022, and March 13, 2022 around the approximate times of vehicle thefts and then traveled to the Kenosha/Somers area or the area of a known residence for Lashawn Davis following those thefts.

37.     The call detail records for 773-542-4368 also showed that the cellular telephone used for this account was an Apple device. Apple, Inc. subscriber records showed two iCloud accounts registered to this device – devon5578@icloud.com and thekid528000@icloud.com with names of "Devon Robinson," "Jevon Robinson," and "Diaunte Shields" for device registrations or subscribers and transactions in 2021 and 2022. "Diaunte Shields" is listed for both accounts.

38.     Detective Vandertie sought and received a search warrant from Milwaukee County Circuit Court for the content of the accounts devon5578@icloud.com and thekid528000@icloud.com accounts. The warrant returns revealed that the subscriber for both accounts is SHIELDS, with two different addresses in Chicago, Illinois. Both accounts contain photographs depicting SHIELDS. They also contain photos and videos of vehicles, screenshots of web inquiries for VINs, screenshots of contact information for an auto glass store in Milwaukee, and photos of large sums of cash. There is also a photograph of a Certificate of Title from Florida for a

2017 Chevrolet pickup truck recovered during the course of the Kenosha County Sheriff's Department search warrant execution, referenced above.

<u>*Information From a Confidential Source*</u>

39.     On September 20, 2022, FBI Task Force Officer (TFO) Detective Mason Kohlhapp received a phone call from an unidentified person who called himself "Don." Don provided the following information. Don stated that he knows the people involved with the Milwaukee County Airport car thefts. The people he stated that are involved are a Diaunte SHIELDS, Casha, and Smiley, the cousin of SHIELDS.

40.     The person who identified himself as Don made several follow-up contacts with law enforcement about SHIELDS. Case agents later identified "Don" by name.[1] Don provided more information about SHIELDS's criminal activity, including that SHIELDS had disclosed to Don that SHIELDS made money by trafficking "strikers," aka stolen vehicles, and that SHIELDS used the garage of the property located at 4186 N. 15th Street, Milwaukee, Wisconsin to store stolen vehicles. Don informed case agents that Diaunte Shields, Casha, and Carl Wilson are investors in the property at 4186 N. 15th Street, Milwaukee, Wisconsin, that the property is vacant, and that the property is being renovated for resale.

41.     Case agents conducted a public records check for the property located at 4186 N. 15th Street, Milwaukee, Wisconsin, which showed that the property is owned by CNT Investments LLC, which is registered to Carl Anthony Wilson, 4545 N 42nd Street, Milwaukee, Wisconsin. CNT Investments purchased the property on August 1, 2022 for $90,000. The utilities have been inactive since August 3, 2022. This is all consistent with an investment property that is being renovated for resale. Case agents have also observed activity consistent with renovating the

---

[1] Don has criminal convictions for operating a vehicle without owner's consent, criminal damage to property, and drug trafficking.

property at 4186 N. 15th Street, Milwaukee, Wisconsin for resale.

42.     On October 18, 2022, law enforcement surveillance teams observed a person matching SHIELDS's description at the property located 4186 N. 15th Street, Milwaukee, Wisconsin. He arrived in a 2014 silver Chevy Impala bearing plate ARF-9505. That car is registered to Executive Rent A Car, which is owned by Casha Griffin, and has an address of 1436 Lincoln Street in Racine (where a search warrant had been executed on April 26, 2022 by the Kenosha County Sheriff's Department, described above).

43.     On October 19, 2022, I observed two black males arrive at the property located 4186 N. 15th Street, Milwaukee, Wisconsin in the Chevy Impala bearing plate ARF-9505. They walked into the house, stayed briefly, then went back to the vehicle and left. Because they both had their hoods up, I could not identify either of them.

44.     On October 24, 2022, Don informed law enforcement that SHIELDS was currently storing two vehicles in the garage located 4186 N. 15th Street, Milwaukee, Wisconsin. Case agents conducted an in-person interview with Don. Don informed case agents that he observed two vehicles, which he believed were stolen, including a Dodge Hellcat and a second vehicle with a broken window inside the garage at 4186 N. 15th Street, Milwaukee, Wisconsin on October 24, 2022. Case agents know that Don has had the opportunity to observe 4186 N. 15th Street, Milwaukee, Wisconsin, because case agents have observed Don entering and exiting the premises.

45.     On October 25, 2022, I observed a white BMW 840i sedan bearing plate APS-4364 arrive at the property located 4186 N. 15th Street, Milwaukee, Wisconsin four different times throughout the morning and early afternoon. On one of those occasions, I observed a person matching SHIELDS's description exit the vehicle and enter the house. The BMW is registered to Executive Rent A Car, which is owned by Casha Griffin.

46.     On October 25, 2022, at about 6:20 p.m., a black male, whose appearance is consistent with SHIELDS, exited the white BMW 840i sedan bearing plate APS-4364 and went toward the front door of the residence located 4186 N. 15th Street, Milwaukee, Wisconsin. At about the same time, the Chevy Impala bearing plate ARF-9505 arrived at or near the garage via the alley behind the house.

47.     At about 6:35 p.m., U.S. Magistrate Judge Stephen C. Dries signed a "sneak and peak" warrant authorizing the search of the garage located behind at 4186 N. 15th Street, Milwaukee, Wisconsin.

48.     At about 6:30 p.m., minutes before the warrant was signed, law enforcement observed a Jeep Trail Hawk or Track Hawk leave from the garage. Law enforcement tailed the vehicle to South 27th Street and then lost sight of it. Law enforcement also saw the Chevy Impala leave the property via the alley, in tandem with the Jeep Trial Hawk or Track Hawk.

49.     At about 7:00 p.m., law enforcement executed the "sneak and peek" warrant at the garage located behind at 4186 N. 15th Street. We discovered one remaining vehicle, a black Dodge Challenger with license plate ARA-9689 and VIN 2C3CDZC91MH659243. An agent from the NICB has confirmed that the visible VIN, 2C3CDZC91MH659243, is fraudulent, and the Challenger's title and registration is also fraudulent.

50.     The NICB agent also explained that the Wisconsin title and license plate application for the Challenger was submitted on August 3, 2022, along with a Georgia title that investigators know was one of several titles stolen from the Georgia Department of Revenue.

51.     The NICB agent also explained that a search of a license plate reader database revealed that the Wisconsin license plate on the Challenger, ARA-9689, was captured in 23 different locations on seven different days between Chicago, Illinois and Modesto, California. The

plate was also recorded on the back of a vehicle transport truck on three occasions in August 2022 as it traveled west on I-80 through Iowa, Nevada, and California.

<em>GPS Tracking Warrants<br>BMW with Plate APS-4364 and Challenger with Plate ARA-9689</em>

52.     Later in the evening on October 25, 2022, around 9:00 p.m., U.S. Magistrate Judge Stephen C. Dries signed two warrants authorizing the placement of GPS tracking devices on the black Dodge Challenger with license plate ARA-9689 that we located in the garage and on the white BMW 840i with license plate APS-4364 that SHIELDS had been observed using.

53.     On November 8, 2022, U.S. Magistrate Judge Nancy Joseph signed a warrant authorizing the placement of a GPS tracking device on the 2014 silver Chevy Impala bearing plate ARF-9505, which SHIELDS had been observed using.

54.     Case agents and local law enforcement partners have been monitoring the movement of the white BMW, the black Challenger, and the silver Impala.

55.     On October 28, 2022, the black Challenger was moved from the 4186 N. 15th Street garage to the SmartStop Self Storage facility located at 3420 W. Capitol Drive in Milwaukee. As of the writing of this affidavit, the GPS unit on the Challenger remains in that location.

56.     Since October 25, 2022, the tracking device on the BMW has traveled to storage facilities in the Milwaukee area, including the U-Haul Storage of Riverwest located at 4390 N. Richards Street in Milwaukee and Devon Self Storage located at 2922 S 5th Court in Milwaukee. The tracking device on the BMW also traveled to the Greenwich Park Apartments located at 2353 N Farwell Avenue in Milwaukee, which appears to have underground parking.

57.     The BMW is often parked near a residential building called the Maxwell Lofts, located at 214 East Florida Street in Milwaukee, where case agents believe SHIELDS rents a unit.

58.     On November 4, 2022, case agents observed SHIELDS near the residence of his associate Lashawn Davis in the Chevy Impala bearing plate ARF-9505. SHIELDS then drove in the Impala to 5206 N. Hopkins Street, which appears to be an abandoned garage.  Before leaving Davis's residence, case agents observed SHIELDS put what they believed to be a long gun case in the trunk of the vehicle.

59.     At the North Hopkins Street garage, case agents were able to see two Ford Bronco Raptors, a blue Bronco Raptor bearing license plate ASB-5303 and an orange Bronco Raptor bearing license plate ASB-5308. SHIELDS left the address driving the orange Bronco Raptor, and driving in tandem with the Chevy Impala, which was then being driven by another male.

60.     On November 7, 2022, an agent from the NICB informed me that both of the Bronco Raptors were titled in Wisconsin with what the Wisconsin Department of Transportation suspects were fraudulent Georgia titles. Investigation into the Bronco Raptors' titles continues. Additionally, on November 10, 2022, the NICB agent informed me that the Ford Motor Company confirmed that the VINs associated with the two Bronco Raptors, including the 2022 blue Ford Bronco Raptor bearing license plate ASB-5303, were not valid.

61.     On November 7, 2022, the 2022 blue Ford Bronco Raptor bearing license plate ASB-5303 was detected via license plate readers in the Chicago, Illinois area.

62.     On several occasions since then, case agents have observed SHIELDS driving the 2022 blue Ford Bronco Raptor bearing license plate ASB-5303 in the Milwaukee area. For example, on November 9, 2022, case agents observed SHIELDS drive the 2022 blue Ford Bronco Raptor bearing license plate ASB-5303 to the ATM at the Self Help Credit Union location at 3340 S. 27th Street, Milwaukee, Wisconsin 53215. On November 10, 2022, case agents observed SHIELDS driving the 2022 blue Ford Bronco Raptor bearing license plate ASB-5303 in the area

of Maxwell Lofts on Florida Street in Milwaukee. The investigation has shown that SHIELDS is associated with an apartment at Maxwell Lofts.

63.    On November 15, 2022, U.S. Magistrate Judge Nancy Joseph signed a warrant authorizing the placement of a GPS tracking device on the 2022 blue Ford Bronco Raptor bearing license plate ASB-5303, which SHIELDS had been observed using.  On November 22, 2022, a tracking device was placed on the blue Ford Bronco Raptor.

*Identification of gray 2021 Dodge Ram TRX bearing vehicle identification number*

*1C6SRFU98MN903300*

64.    On November 22, 2022 at approximately 9:45 a.m., case agents observed a gray Dodge Ram TRX bearing Michigan dealer plate 468D50 and dashboard vehicle identification number (VIN) 1C6SRFU98MN903300 parked in the underground parking garage at 4034 N. Bartlett Avenue, Shorewood, Wisconsin. The parking structure is used by residents of LightHorse 4041 Apartments.  The vehicle was parked in the same stall in which case agents previously observed the orange Ford Bronco Raptor parked (described above).  The associated Michigan dealer plate was also seen by case agents on October 25, 2022, on a Jeep that left the garage at 4186 N. 15th Street, Milwaukee, Wisconsin (described above).

65.    A query of VIN 1C6SRFU98MN903300 indicated that the vehicle was registered in Illinois to a gray 2021 Dodge Ram and was valid. The vehicle registration also indicated that the vehicle should have a personalized Illinois license plate. During the initial query, the vehicle was not reported stolen. However, later on November 22, 2022, the vehicle was reported stolen by the Chicago Police Department. The incident report stated that the vehicle was stolen from Midway Airport in Chicago. The owner parked the vehicle on November 15, 2022; and, when the owner returned to retrieve the vehicle on November 20, 2022, it was not in the spot they parked it.

66.    On November 22, 2022, at approximately 10:00 a.m., case agents observed a truck

bearing Michigan license plate DAD640 enter the parking garage. At approximately 10:30 a.m. the truck with plate DAD640 and the stolen TRX departed the garage.

67.     Shortly after departing the parking garage, case agents observed the stolen Dodge Ram TRX at 5206 N. Hopkins Street in Milwaukee. Case agents observed the blue Bronco Raptor (described above) pull out of a garage stall and the stolen TRX pull into the garage stall. That location – 5206 N. Hopkins Street – is the same location that case agents saw the blue and orange Bronco Raptors on November 4, 2022.

## TECHNICAL BACKGROUND

68.     I am aware from training and speaking with other law enforcement officers that newer vehicles, such as a 2021 Dodge Ram TRX, are equipped with cellular modems inside the vehicle. These modems enable connectivity within the vehicle to include end user applications (including UConnect, OnStar and Ford Sync) as well as WiFi services inside the vehicle. The modems have unique identifiers similar to that of a cellular phone, including an assigned call number. These identifiers, including the call number, generate historical records on the cellular network and provide information regarding cell sites and sectors that are utilized. These records can provide information about the vehicle and, in turn, identify evidence associated with the investigation as is traditionally available with a cellular phone.

69.     By providing the vehicle identification number (VIN), AT&T ("Service Provider") and/or the manufacturer are able to provide the unique device identifiers associated with the vehicle. I know through training and experience, including speaking with other law enforcement officers and agents who have obtained records for vehicles, that the Dodge Ram TRX vehicle has been equipped with a cellular modem and uses the Uconnect system. I also know that there does not have to be an active wireless subscription or service for the vehicle to generate records on the cellular network.

70.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

71.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Call Number. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## E-911 Phase II / GPS Location Data

72.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Call Number, including by initiating a signal to determine the location of the Target Call Number on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

73.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber

Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### Subscriber Information

74.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Call Number's user or users and may assist in the identification of co-conspirators.

### AUTHORIZATION REQUEST

75.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

76.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

77.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the

information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Call Number on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

78.      I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until June 1, 2023. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. This investigation is expected to remain covert at least until then, so disclosing the warrant would alert targets or subjects about the existence of a federal investigation. Investigators will continue to request the same notification deadline for all warrants in this investigation, so that the notifications can be coordinated or extended as necessary. A single notification date will reduce the administrative burden on investigators and the Court, minimize the risks of disclosure, and promote judicial economy. Providing immediate notice to the subscriber or user of the Target Call Number would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

79.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Call Number outside of daytime hours.

**ATTACHMENT A**

**Property to Be Searched**

1. Records and information associated with the call number associated with vehicle identification number (VIN) 1C6SRFU98MN903300 (referred to herein and in Attachment B as "the Target Call Number"), with listed subscriber(s) unknown, that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.

2. The Target Call Number.

## ATTACHMENT B

### Particular Things to be Seized

**I.** **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Call Number for the time period from November 14, 2022, to the present.

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Call Number, including:

(i) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) for all voice, text, and data records.

(iii) timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b. Information associated with each communication to and from the Target Call Number for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Call Number will connect at the beginning and end of each communication.

v. timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Call Number.

c. Information about the location of the Target Call Number for a period of 30 days, during all times of day and night. "Information about the location of the Target Call Number" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location

Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Call Number on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.    Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. §§ 371, 511, and 2312 involving DIAUNTE SHIELDS (DOB: 02/18/1995), and others known and unknown since January 1, 2019.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.